## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>EVANGELICAL COMMUNITY HOSPITAL<br><br>and<br><br>GEISINGER HEALTH,<br><br>Defendants. | Civil Action No.: 4:20-cv-01383-MWB |

## **FINAL JUDGMENT**

WHEREAS, Plaintiff, United States of America, filed its Complaint on August 5, 2020, the United States and Defendants, Geisinger Health and Evangelical Community Hospital, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law, and without Defendants admitting liability, wrongdoing, or the truth of any allegations in the Complaint;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the purpose of the proposed Final Judgment is to preserve competition for hospital services in central Pennsylvania and to ensure Evangelical and Geisinger remain independent competitors;

AND WHEREAS, Defendants agree to undertake certain actions and refrain from certain conduct for the purpose of remedying the anticompetitive effects of the Collaboration Agreement, as alleged in the Complaint.

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.   <u>JURISDICTION</u>

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, 15 U.S.C. § 18 and Section 1 of the Sherman Act, 15 U.S.C. § 1.

## II.   <u>DEFINITIONS</u>

A.     "Amended and Restated Collaboration Agreement" means the "Second Amended and Restated Collaboration Agreement" entered into by Geisinger and Evangelical on May 10, 2021.

B.     "Back Office Systems" means the following computer systems and their functional substitutes: Spok/WebXchange (electronic phonebook); Digital Control Systems/Micros (food services registers); Lawson Accounts Payable; Lawson Activities Mgmt (project accounting and activities-based costing); Lawson Asset Mgmt (depreciation and reporting requirements); Lawson General Ledger; Allscripts (data transfer); and Axiom.

C.     "Collaboration Agreement" means the document titled "Collaboration Agreement" entered into by Evangelical and Geisinger on February 1, 2019.

D.     "Covered Person" means (i) each employee or agent of each Defendant who has duties and responsibilities for overseeing the implementation of information technology systems

2

that Geisinger may provide to Evangelical under Paragraph V.B. of this Final Judgment; (ii) the

Chief Executive Officers of Defendants and each of their direct reports; and (iii) each director

(including each member of the Boards of Directors) of each Defendant.

E.      "Defendants" means Geisinger and Evangelical.

F.      "Epic" means Epic Systems Corporation, a medical software company based in

Verona, Wisconsin.

G.      "Evangelical" means Defendant Evangelical Community Hospital, a non-profit

community hospital located in Lewisburg, Pennsylvania, its successors and assigns, and its

subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors,

officers, managers, agents, and employees.

H.      "Existing Financial Payment" means the combined payments of twenty million,

three hundred thirty-four thousand twenty-three dollars ($20,334,023.00) paid by Geisinger to

Evangelical, directly or indirectly.

I.      "Executive Leadership Personnel" means any President, Chief Executive Officer,

Chief Financial Officer, Chief Information Officer, Chief Operating Officer, Chief Strategy

Officer, Chief Nursing Officer, Chief Human Resources Officer, Controller, Director, Executive

Vice President, Vice President, and any other person with any direct or indirect input, influence,

or control over any strategic or competitive decision.

J.      "Geisinger" means Defendant Geisinger Health, a regional non-profit corporation

with its headquarters in Danville, Pennsylvania, its successors and assigns, and its subsidiaries,

including Geisinger Health Plan, divisions, groups, affiliates, partnerships, and joint ventures,

and their directors, officers, managers, agents, and employees.

K.      "Including" means including but not limited to.

3

L.    "Miller Center Joint Venture" means the Miller Center for Recreation and Wellness, a Pennsylvania non-profit corporation operating a recreation and wellness center in Lewisburg, Pennsylvania.

M.    "Ownership Interest" means the seven-and-one-half percent (7.5%) ownership interest in Evangelical that Evangelical transferred to Geisinger in exchange for the Existing Financial Payment, based on Evangelical's valuation as of January 25, 2021.

N.    "Person" means any natural person, trade association, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office, or other business or legal entity, whether private or governmental.

O.    "Pre-Existing Joint Ventures" means the Keystone Accountable Care Organization, LLC, an organization of doctors, hospitals, and other healthcare providers that provides coordinated care to Medicare patients and Evangelical-Geisinger, LLC, the joint venture between Evangelical and Geisinger to provide student health services to Bucknell University.

## III.   APPLICABILITY

This Final Judgment applies to Defendants, as defined above, and all other Persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

## IV.   PROHIBITED CONDUCT

A.    The Collaboration Agreement and all amendments, modifications, addenda or supplements, are null and void, with the exception of the Amended and Restated Collaboration Agreement.

B.    Geisinger must not, directly or indirectly:

4

1. appoint any directors to the Board of Directors of Evangelical;

2. make any financial contribution, payment, or commitment to Evangelical that would result in Geisinger obtaining any equity interest in Evangelical in excess of the Ownership Interest;

3. make any loan or extend any line of credit to Evangelical;

4. maintain or obtain any management, leadership, committee, board or other position at or with Evangelical that provides Geisinger with any direct or indirect input, influence, or control over any strategic or competitive decision to be made by Evangelical, except for any such positions within Pre-Existing Joint Ventures or the Miller Center Joint Venture;

5. maintain or obtain any right of first offer or right of first refusal with respect to any proposal or offer involving Evangelical, including offers or proposals to acquire, affiliate or enter into a joint venture with Evangelical, or otherwise influence or seek to influence any decision to be made by Evangelical with respect to any proposal or offer involving Evangelical and any other party;

6. approve, reject or otherwise influence Evangelical's use of any funds or provide a guaranty to Evangelical against any financial losses that Evangelical may incur; or

7. license to Evangelical any information technology system owned, used, or licensed by Geisinger, without the prior written consent of the United States, in its sole discretion.

C.     Evangelical must not, directly or indirectly, appoint any directors to the Board of Directors of Geisinger, including to the Board of Directors of Geisinger Health Plan.

D.      Except for the verification of dates of employment and the checking of references for new hires, Defendants must not consult with, provide advice to, or seek to influence, directly or indirectly, each other regarding the decision to appoint or employ any Executive Leadership Personnel, except for such positions within Pre-Existing Joint Ventures or the Miller Center Joint Venture.

E.      Defendants must not enter into a joint venture unless the United States, in its sole discretion, has consented in writing.  Defendants must not renew, extend, or amend the term of the Miller Center Joint Venture unless the United States, in its sole discretion, has consented in writing.  Defendants may renew or extend the term of a Pre-Existing Joint Venture, but may not amend a Pre-Existing Joint Venture unless the United States, in its sole discretion, has consented in writing.

F.      Defendants must not amend, supplement, terminate, or modify the Amended and Restated Collaboration Agreement, or any portion of it, without the prior written consent of the United States, in its sole discretion.  Defendants must provide at least sixty (60) days written notice to the United States of any intent to enter into or execute any amendment, supplement, or modification to the Amended and Restated Collaboration Agreement.

G.      Defendants must not provide each other with non-public information, including any non-public financial information of either Defendant or information about any strategic projects under consideration by either Defendant; provided however that nothing herein will be construed to prevent Geisinger and Evangelical from disclosing to each other non-public information necessary for the care and treatment of patients or as required for the payment for the care and treatment of patients.

6

## V.   PERMITTED CONDUCT

A.      Evangelical must not use the Existing Financial Payment for any purpose other than the following permitted uses:

1. assisting Evangelical's PRIME patient room improvement project (approximately $17 million); and

2. sponsoring the Miller Center Joint Venture (approximately $3.3 million).

B.      Notwithstanding Paragraph IV.B.7. above, Geisinger may provide Evangelical with information technology systems and support under the following terms and conditions:

1. Geisinger may provide to Evangelical Geisinger's electronic medical record systems (Epic and related embedded clinical systems), including a license to the embedded Geisinger intellectual property, at a cost of no less than 15% of the incremental increase in cost to Geisinger resulting from Evangelical's use of these same systems;

2. Geisinger may provide Evangelical with electronic medical record systems support for the systems identified in Paragraph V.B.1. at a cost of no less than 15% of the incremental increase in cost to Geisinger for the support for these same systems; and

3. Geisinger may provide additional Back Office Systems to Evangelical at commercially reasonable rates.

## VI.   REQUIRED CONDUCT

A.      Within ten (10) days of entry of this Final Judgment, each Defendant must appoint an Antitrust Compliance Officer and identify to the United States the Antitrust Compliance Officer's name, business address, telephone number, and email address.  Within

7

forty-five (45) days of a vacancy in a Defendant's Antitrust Compliance Officer position, that Defendant must appoint a replacement, and must identify to the United States the replacement Antitrust Compliance Officer's name, business address, telephone number, and email address. A Defendant's initial or replacement appointment of an Antitrust Compliance Officer is subject to the approval of the United States in its sole discretion.

B.      Each Antitrust Compliance Officer must:

1. within thirty (30) days of entry of this Final Judgment, furnish a copy of this Final Judgment and the Competitive Impact Statement to all Covered Persons;

2. within thirty (30) days after entry of this Final Judgment, in a form and manner to be approved by the United States in its sole discretion, provide all Covered Persons with reasonable notice of the meaning and requirements of this Final Judgment and the antitrust laws;

3. annually train all Covered Persons on the meaning and requirements of this Final Judgment and the antitrust laws;

4. brief and distribute a copy of this Final Judgment and the Competitive Impact Statement to any person who succeeds to a position of a Covered Person within thirty (30) days of such succession;

5. obtain from each Covered Person, within thirty (30) days of that person's receipt of this Final Judgment, a certification that he or she (i) has read and, to the best of his or her ability, understands and agrees to abide by the terms of this Final Judgment; (ii) is not aware of any violation of this Final Judgment that has not been reported to the relevant Defendant's Antitrust Compliance Officer; and (iii) understands that any person's failure to comply with this Final Judgment may

8

result in an enforcement action for civil or criminal contempt of court against any

Defendant and/or any person who violates this Final Judgment;

6.  maintain a record of certifications received pursuant to this Section;

7.  annually communicate to all Covered Persons and all other employees that they

must disclose to the Antitrust Compliance Officer, without reprisal, information

concerning any potential violation of this Final Judgment or the antitrust laws;

and

8.  by not later than ninety (90) calendar days after entry of this Final Judgment and

annually thereafter, file written reports with the United States affirming that

Defendant is in compliance with its obligations under Section VI of this Final

Judgment, including the training requirements under Paragraph VI.B.3.

C.      Immediately upon the Antitrust Compliance Officer's learning of any violation or

potential violation of any of the terms of this Final Judgment, a Defendant must take appropriate

action to investigate and, in the event of a violation, must cease or modify the activity so as to

comply with this Final Judgment.  Each Defendant must maintain all documents related to any

potential violation of this Final Judgment for the term of this Final Judgment.

D.      Within thirty (30) calendar days of the Antitrust Compliance Officer's learning of

any potential violation of any of the terms of this Final Judgment, a Defendant must file with the

United States a statement describing the potential violation, including a description of (1) any

communications constituting the potential violation, the date and place of the communication,

the persons involved in the communication, and the subject matter of the communication; and (2)

all steps taken by the Defendant to remedy the potential violation.

E.      Each Defendant must have its CEO or Chief Financial Officer and its General Counsel certify in writing to the United States, no later than ninety (90) calendar days after this Final Judgment is entered and then annually on the anniversary of the date of the entry of this Final Judgment, that the Defendant has complied with the provisions of this Final Judgment. The United States, in its sole discretion, may approve different signatories for the certification.

## VII.   FIREWALL

A.      Defendants must implement and maintain reasonable procedures to prevent competitively sensitive information from being disclosed, by or through implementation and execution of the obligations in this Final Judgment or the Amended and Restated Collaboration Agreement or through Geisinger's provision of information technology systems and support to Evangelical as permitted in Paragraph V.B., between or among employees of Geisinger and Evangelical.

B.      Defendants must, within forty-five (45) business days of the entry of the Stipulation and Order, submit to the United States a document setting forth in detail the procedures implemented to effect compliance with this Section VII. Upon receipt of the document, the United States will inform Defendants within thirty (30) business days whether, in its sole discretion, it approves of or rejects Defendants' compliance plan. Within ten (10) business days of receiving a notice of rejection, Defendants must submit a revised compliance plan. The United States may request that this Court determine whether Defendants' proposed compliance plan fulfills the requirements of this Section VII.

## VIII.  COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment, or of any related orders such as any Stipulation and Order, or of determining whether this Final

Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time, authorized representatives of the United States, including agents and consultants retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

> (1) access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide electronic copies, of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

> (2) to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews will be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in Section VIII will be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time that Defendants furnish information or documents to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal

11

Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to

claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the

United States shall give Defendants ten (10) calendar days' notice prior to divulging such

material in any legal proceeding (other than a grand jury proceeding).

## IX.   NOTIFICATIONS

For purposes of this Final Judgment, any notice or other communication required to be

provided to the United States shall be sent to the person at the address set forth below (or such

other addresses as the United States may specify in writing to Defendants):

>Chief
>Office of Decree Enforcement and Compliance
>U.S. Department of Justice
>Antitrust Division
>950 Pennsylvania Avenue, NW
>Room 3207
>Washington, D.C. 20530
>Email: ODEC@usdoj.gov

## X.   RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this

Court at any time for further orders and directions as may be necessary or appropriate to carry

out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and

to punish violations of its provisions.

## XI.   ENFORCEMENT OF FINAL JUDGMENT

A.     The United States retains and reserves all rights to enforce the provisions of this

Final Judgment, including the right to seek an order of contempt from the Court.  Defendants

agree that in any civil contempt action, any motion to show cause, or any similar action brought

by the United States regarding an alleged violation of this Final Judgment, the United States may

establish a violation of the decree and the appropriateness of any remedy therefore by a preponderance of the evidence, and Defendants waive any argument that a different standard of proof should apply.

B.      The Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore all competition harmed by the challenged conduct. Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.      In any enforcement proceeding in which the Court finds that Defendants have violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with such other relief as may be appropriate. In connection with any successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved prior to litigation, that Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as any other costs including experts' fees, incurred in connection with that enforcement effort, including in the investigation of the potential violation.

## XII.   <u>EXPIRATION OF FINAL JUDGMENT</u>

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendants that the continuation of this Final Judgment is no longer necessary or in the public interest.

## XIII.   **PUBLIC INTEREST DETERMINATION**

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, any comments thereon, and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.

[Court approval subject to procedures of Antitrust Procedures and Penalties Act, 15 U.S.C. § 16]

BY THE COURT:

Date:   September 16, 2021

Matthew W. Brann
Chief United States District Judge